**Opinion filed August 31, 2023**



## In The

# Eleventh Court of Appeals

_____

## No. 11-22-00098-CR

_____

### ENRIQUE GUADALUPE ORTEGA, JR., Appellant

### V.

### THE STATE OF TEXAS, Appellee

**On Appeal from the 35th District Court**

**Brown County, Texas**

**Trial Court Cause No. CR28488**

### M E M O R A N D U M   O P I N I O N

Appellant, Enrique Guadalupe Ortega, Jr., contests his conviction for unlawful possession of a firearm by a felon, a third-degree felony. *See* TEX. PENAL CODE ANN. § 46.04(a), (e) (West Supp. 2022). The indictment included an enhancement allegation which, if found to be "true," would increase the punishment range for the offense to that of a second-degree felony under the repeat offender statute. *See id.* § 12.42(a) (West 2019). Appellant elected to have the trial court

assess his punishment. Based on Appellant's plea of "true," the trial court found the enhancement allegation to be "true" and assessed his punishment at twelve years' confinement in the Institutional Division of the Texas Department of Criminal Justice. In two issues, Appellant argues (1) that the trial court's omission of non-statutory definitions in the abstract portion of the charge and the failure to define the elements of the charged offense in the abstract portion of the charge were both egregiously harmful; and (2) that the trial court's admission of the contents of a backpack containing ammunition was an abuse of discretion. We affirm.

*Factual and Procedural History*

Brownwood Police Department Officer Roberto Rodriguez initiated a traffic stop based on an expired registration. The driver of the vehicle continued driving for about one and one-half blocks; Officer Rodriguez saw "a lot of movement from every occupant of the vehicle." Once stopped, the driver tried to immediately exit the vehicle, and Appellant, who was seated in the front passenger seat, reached down to the front floorboard. Officer Rodriguez called for backup and, after the officers secured the two other occupants (both with outstanding warrants), Officer Rodriguez asked Appellant to step out of the vehicle. As Appellant did so, Officer Rodriguez saw that Appellant was sitting on a firearm magazine loaded with ammunition. Based on the loaded magazine, Officer Rodriguez suspected that there might be a firearm in the vehicle, and so he detained Appellant. Officers searched the vehicle, and Detective Aaron Taylor found a disassembled handgun. The recoil spring and receiver were stashed underneath the front passenger seat, and the retention plate and slide of the handgun were in the front passenger floorboard, covered by a disposable cup. All of the components of the firearm were found inside the vehicle.

While searching the trunk, officers found a backpack that Appellant claimed was his. The backpack contained two marihuana pipes, ammunition that matched the caliber of the firearm, and some ammunition that did not. Officer Rodriguez

2

testified that, although he knew that Appellant was a felon and that he was in possession of a firearm, he was uncertain about whether Appellant could lawfully possess a firearm on that particular date, given the five-year statutory time frame required by the felon-in-possession statute. As a result, Officer Rodriguez did not arrest Appellant at that time.

Appellant was later indicted for unlawful possession of firearm by a felon. At trial, Appellant objected to the admission of the contents of the backpack, but he did not object to the trial court's charge.

*Standard of Review*

"The purpose of the jury charge is to inform the jury of the applicable law and guide them in its application to the case." *Beltran De La Torre v. State*, 583 S.W.3d 613, 617 (Tex. Crim. App. 2019) (quoting *Hutch v. State*, 922 S.W.2d 166, 170 (Tex. Crim. App. 1996)). The abstract paragraphs in the charge "serve as a glossary to help the jury understand the meaning of concepts and terms used in the application paragraphs of the charge," *Crenshaw v. State*, 378 S.W.3d 460, 466 (Tex. Crim. App. 2012) and the application paragraphs apply the "pertinent penal law, abstract definitions, and general legal principles to the particular facts and the indictment allegations," *Vasquez v. State*, 389 S.W.3d 361, 366 (Tex. Crim. App. 2012). In the context of an abstract instruction, reversible error generally only occurs when the instruction is an incorrect or misleading statement of a law that "the jury must understand in order to implement the commands of the application paragraph." *Crenshaw*, 378 S.W.3d at 466. The "failure to give an abstract instruction is reversible only when such an instruction is necessary to a correct or complete understanding of concepts or terms in the application part of the charge." *Plata v. State*, 926 S.W.2d 300, 302 (Tex. Crim. App. 1996), *overruled on other grounds by Malik v. State*, 953 S.W.2d 234 (Tex. Crim. App. 1997). Further, a jury charge must include instructions informing the jurors "under what circumstances they should

3

convict, or under what circumstances they should acquit" the accused. *Mendez v. State*, 545 S.W.3d 548, 553 (Tex. Crim. App. 2018) (quoting *Gray v. State*, 152 S.W.3d 125, 127–28 (Tex. Crim. App. 2004)).

A review of alleged jury-charge error involves two steps. *Ngo v. State*, 175 S.W.3d 738, 744 (Tex. Crim. App. 2005); *Abdnor v. State*, 871 S.W.2d 726, 731–32 (Tex. Crim. App. 1994). First, we determine if there is any error; second, if there is error, we must determine if the error is harmful requiring reversal. *Ngo*, 175 S.W.3d at 743–44; *Abdnor*, 871 S.W.2d at 731–32.

Not all jury charge errors require reversal on appeal. *Reeves v. State*, 420 S.W.3d 812, 816 (Tex. Crim. App. 2013). If the charge is erroneous, then on appeal we must first determine if the defendant objected to the erroneous charge. *Id.* If the defendant objected to the erroneous charge, we will reverse if the record shows that the error caused "some harm." *Id.* Conversely, if the defendant failed to object, an appellate court may only reverse upon a finding of "egregious harm." *Id.* Egregious harm is harm that denies the defendant a fair and impartial trial. *Nava v. State*, 415 S.W.3d 289, 298 (Tex. Crim. App. 2013). This is a difficult standard to meet, and the harm must be shown in the record. *Reeves*, 420 S.W.3d at 816. To assess harm, the appellate court reviews (1) the jury charge itself, (2) the state of the evidence, including weight and probative value, (3) counsel's arguments, and (4) any other relevant information in the trial record. *Vega v. State*, 394 S.W.3d 514, 521 (Tex. Crim. App. 2013).

To ensure compliance with Article 36.14 of the Texas Code of Criminal Procedure, a trial court should "avoid including non-statutory instructions in the charge because such instructions frequently constitute impermissible comments on the weight of the evidence." *De La Torre*, 583 S.W.3d at 617. A trial court is obliged to include statutory definitions that affect the meaning of an element of the charged offense. *Lovings v. State*, 376 S.W.3d 328, 337 (Tex. App.—Houston [14th Dist.]

2012, no pet.). Conversely, "[w]here terms used are words simple in themselves, and are used in their ordinary meaning, jurors are supposed to know such common meaning and terms and under such circumstances such common words are not necessarily to be defined in the charge to the jury." *Druery v. State*, 225 S.W.3d 491, 509 (Tex. Crim. App. 2007) (quoting *King v. State*, 553 S.W.2d 105, 107 (Tex. Crim. App. 1977)).

*Analysis*

Appellant asserts two arguments within his first issue.[1] Appellant argues that the trial court's omission of non-statutory definitions in the abstract was egregiously harmful; but also, that the trial court's failure to define the elements of the charged offense in the abstract was egregiously harmful.

The jury charge provided the statutory definitions for "firearm" and "possession." "Firearm" and "possession" are terms defined under Sections 46.01 and 1.07 of the Texas Penal Code. *See* PENAL § 46.01(3), § 1.07(a)(39) (West 2021). But Appellant argues that the failure to include non-statutory definitions for "confinement" and "premises" left the jury to its own devices to understand these terms.[2] The terms "confinement" and "premises" are not defined under Section 46.01, which is the statute that provides the definitions for offenses in

---

[1]Appellant briefs this as a single issue but raises two separate grounds within the issue. Although multifarious, we address each in the interest of justice. *See Davis v. State*, 329 S.W.3d 798, 803 (Tex. Crim. App. 2010) (citing TEX. R. APP. P. 38.1).

[2]Appellant also vaguely argues that, in addition to "confinement" and "premises" being left undefined, "other terms perhaps found in an abstract paragraph" were also left undefined. "[A]n appellant is the master of his or her own destiny with respect to what issues the court of appeals is required to address within its written opinion." *Wolfe v. State*, 509 S.W.3d 325, 343 (Tex. Crim. App. 2017). We decline to make Appellant's arguments for him. *See* TEX. R. APP. P. 38.1(f), (i); *Lucio v. State*, 351 S.W.3d 878, 898 (Tex. Crim. App. 2011) (holding that appellant's point of error was "inadequately briefed and presents nothing for review as this Court is under no obligation to make appellant's arguments for her.").

Chapter 46, or Section 46.04, the statute for the offense of conviction.[3] *See* PENAL § 46.01, 46.04. Therefore, the trial court did not err when it omitted the definitions for these two terms and, as a result, permitted the jury to read them and ascertain their common meaning. *See Druery*, 225 S.W.3d at 509.

Appellant also argues that the trial court erred when it failed to give an instruction in the abstract portion of the charge that delineated the elements of an offense under Section 46.04, and that this failure "acted as" a comment on the weight of the evidence. The application portion of the contested instruction reads as follows.

> Now, if you find from the evidence beyond a reasonable doubt that on or about the 28th day of June, 2021, in Brown County, Texas, ENRIQUE GUADALUPE ORTEGA, JR, the defendant, *having been convicted of the felony offense of Burglary of a Habitation on the 24th day of May, 2007*, in cause number CR18478 in the 35th Judicial District Court of Brown County, Texas, did then and there intentionally or knowingly possess a firearm after the fifth anniversary of the defendant's release from confinement following conviction of the felony at a location other than the premises at which the defendant lived, namely in a vehicle, then you will find the defendant guilty as charged of Felon in Possession of Firearm as set forth in the indictment in Cause Number CR28488. (Emphasis added).

Appellant takes particular issue with the emphasized phrase in the above paragraph. This portion of the application section in the charge replicates the language of the indictment word for word.

First, we note that a trial court's failure to define the statutory elements in the abstract portion of the charge may constitute error. *Compare Meanes v. State*, 668 S.W.2d 366, 374–75 (Tex. Crim. App. 1983) (contrary to Appellant's contention, the offense was, "in effect, defined in the application [portion of the charge]," and

---

[3]"Premises" is defined in adjacent sections. *See* PENAL §§ 46.02, 46.03. In these sections, however, the definitions patently apply only to their respective sections. *Id.* § 46.02(a-2), 46.03(c).

"Appellant [did] not state how he was harmed by the absence of an abstract charge on [the offense]") *with Alcoser v. State*, 596 S.W.3d 332, 333 (Tex. App.—Amarillo 2019, *rev'd on other grounds*, 663 S.W.3d 160 (Tex. Crim. App. 2022) ("The failure to include an abstract definition of an offense is error.") *and Fields v. State*, No. 01-20-00280-CR, 2022 WL 3268525, at *3, 8 (Tex. App.—Houston [1st Dist.] Aug. 11, 2022, pet. ref'd) (omission of the elements of an underlying felony offense in the abstract portion was "charge error"); *see also Alcoser*, 663 S.W.3d at 166–67 (not addressing the issue because the State did "not dispute that the court of appeals correctly reversed Appellant's convictions" on two other charges based on a finding that Appellant was "egregiously harmed by the *cumulative* errors" in the charge) (emphasis added).  However, in this case, we do not believe, based on a fair reading of the charge as a whole, that the trial court erred in failing to include the statutory elements of the charged offense.  *See Meanes*, 668 S.W.2d at 375.

Second, a trial court does not comment on the weight of the evidence when its charge tracks the language of the indictment, and the allegations in the indictment are preceded by the phrase, "*if you find from the evidence beyond a reasonable doubt that. . . .*"  *Wilson v. State*, 419 S.W.3d 582, 595 (Tex. App.—San Antonio 2013, no pet.); *see Coplin v. State*, 585 S.W.2d 734, 736 (Tex. Crim. App. [Panel Op.] 1979) (a jury charge that tracked the language of the indictment after the phrase "if you find and believe" was not a comment on the weight of the evidence).

Moreover, even if the trial court erred in failing to define the statutory elements of the offense or such wording constituted an improper comment on the weight of the evidence, we conclude that such error was not egregiously harmful. *See Belle v. State*, 543 S.W.3d 871, 879 (Tex. App.—Houston [14th Dist.] 2018, no pet.) (the charge error did not cause the appellant egregious harm; the record reflected that the predicate felony was not a contested issue at trial). Appellant's prior conviction was not a contested issue.  Considering that the evidence of

7

Appellant's prior conviction was undisputed, uncontradicted, and seemed to have been taken almost as a "given" by the parties, the failure of the trial court to define the statutory elements—in particular the felony status element underlying Appellant's complaint—and the trial court's alleged comment on the weight of the evidence regarding Appellant's status as a felon by failing to do so, was not egregiously harmful. *See id.* Nothing in the record before us, including the jury charge, all of the evidence admitted at trial, and the arguments of counsel, suggests that the jury was so confused by the complained-of instruction that Appellant was denied a fair and impartial trial. *See Vega*, 394 S.W.3d at 521–22; *Herrera v. State*, 527 S.W.3d 675, 679 (Tex. App.—Houston [14th Dist.] 2017, pet. ref'd). We overrule Appellant's first issue.

*Admissibility of Evidence under Rule 403*

In Appellant's second issue, he argues that the trial court erred when it admitted evidence of the backpack that contained ammunition. The State responds that Appellant has waived this argument because he did not continue to object after the first discussion with the trial court outside the presence of the jury.

To preserve error on appeal, a party must make a timely request, objection, or motion "with sufficient specificity to make the trial court aware of the complaint." TEX. R. APP. P. 33.1(a)(1)(A). Generally, a party must object each time inadmissible evidence is offered. *Ethington v. State*, 819 S.W.2d 854, 858 (Tex. Crim. App. 1991). There are two exceptions. *Geuder v. State*, 115 S.W.3d 11, 13 (Tex. Crim. App. 2003). A party may (1) request a running objection or (2) obtain a ruling outside the presence of the jury. *Id.*; *see* TEX. R. EVID. 103(b). The second exception applies to this case. Appellant objected to the admissibility of the contents of the backpack outside the presence of the jury before the State first elicited testimony about that evidence. The trial court ruled that the contents of the backpack, except for the two marihuana pipes, were admissible. Because Appellant obtained a ruling

on the objections outside the presence of the jury, no further objections were necessary. Appellant preserved this argument for appeal.

The trial court has substantial discretion when ruling on a Rule 403 objection. *State v. Mechler*, 153 S.W.3d 435, 439 (Tex. Crim. App. 2005). "Rule 403 favors the admission of relevant evidence and carries a presumption that relevant evidence will be more probative than prejudicial." *Hayes v. State*, 85 S.W.3d 809, 815 (Tex. Crim. App. 2002) (citing *Montgomery v. State*, 810 S.W.2d 372, 376 (Tex. Crim. App. 1990)); *see Martin v. State*, 570 S.W.3d 426, 437 (Tex. App.—Eastland 2019, pet. ref'd). "Rule 403 requires exclusion of evidence only when there exists a clear disparity between the degree of prejudice of the offered evidence and its probative value." *Conner v. State*, 67 S.W.3d 192, 202 (Tex. Crim. App. 2001). Therefore, in reviewing a trial court's Rule 403 determination, we will reverse the trial court's ruling only if a clear abuse of discretion is shown. *Mozon v. State*, 991 S.W.2d 841, 847 (Tex. Crim. App. 1999); *Montgomery*, 810 S.W.2d at 392; *Martin*, 570 S.W.3d at 437. Under this standard, the trial court's decision to admit or exclude evidence will be upheld so long as it is within the "zone of reasonable disagreement." *Beham v. State*, 559 S.W.3d 474, 478 (Tex. Crim. App. 2018).

When undertaking a Rule 403 analysis, a trial court must consider several factors (the *Gigliobianco* factors) and balance:

> (1) the inherent probative force of the proffered item of evidence along with (2) the proponent's need for that evidence against (3) any tendency of the evidence to suggest [a] decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted.

9

*Garcia v. State*, 630 S.W.3d 264, 268 (Tex. App.—Eastland 2020, no pet.) (quoting *Gigliobianco v. State*, 210 S.W.3d 637, 641–42 (Tex. Crim. App. 2006)). These factors guide our analysis. "The first two *Gigliobianco* factors focus on the probative force of and the State's need for the evidence." *Garcia*, 630 S.W.3d at 269. The term "probative value" refers to the inherent probative force of an item of evidence—that is, how strongly it serves to make the existence of a fact of consequence more or less probable—along with the proponent's need for the evidence. *Gigliobianco*, 210 S.W.3d at 641. The remaining *Gigliobianco* factors focus on the potential negative effects of the proffered evidence. *Garcia*, 630 S.W.3d at 269.

While searching the vehicle, Officer Rodriguez found Appellant's backpack in the trunk of the vehicle. Appellant told Officer Rodriguez that the backpack belonged to him. The backpack had fourteen rounds of ammunition that were the same caliber and brand that were in the magazine that Appellant was sitting on in the vehicle, as well as rounds of four other calibers: .22 long rifle, .410 shotgun, .38 special, and both .32-20 and .38-20 Winchester.

*Applying the Gigliobianco factors*

The first *Gigliobianco* factor considers the extent to which the evidence serves to make fact of consequence more or less probable. *Gigliobianco*, 210 S.W.3d at 641; *see Mechler*, 153 S.W.3d at 440. The second factor examines the need for that evidence in support of a party's case. Here, the evidence was relevant in proving that Appellant intentionally or knowingly possessed the firearm.

The rounds of .25 caliber FC brand ammunition in Appellant's backpack were the same caliber and brand that were in the magazine that Appellant was sitting on in the vehicle. Appellant's admission that the backpack was his when it contained rounds matching those in the magazine and that could be used in the firearm, made the backpack and its contents relevant circumstantial evidence of Appellant's intent

10

to possess, and possibly use, the firearm. There was no direct evidence that Appellant intentionally or knowingly possessed the firearm. Therefore, the State's need for this evidence was high. Appellant's trial counsel questioned whether Appellant knew the firearm was in the vehicle and argued that the four other calibers of ammunition and disassembled firearm pieces were merely an "assortment of metal" rather than a firearm, thereby questioning whether the component pieces constituted a firearm. The backpack evidence cumulatively tended to rebut Appellant's arguments and prove Appellant's possession and control of the ammunition in the magazine, the disassembled gun, and the ammunition in the backpack.

The additional ammunition is at least circumstantial evidence that he was familiar with firearms and the disassembled firearm in the vehicle. The trial court in its Rule 403 balancing test stated:

> I will find that the prejudicial -- the probative value outweighs the -- substantially outweighs the prejudicial effect because under the circumstances thus far that has been testified to, as it relates to the firearm, it being taken apart, it would go to -- it would go -- it would have probative value as to the Defendant's knowledge of ammunition, weapons, et cetera. So I will find that it has probative value.

Accordingly, regarding the first two *Giglibianco* factors as to the evidence's probative force and the State's need for it in the case, the evidence strongly favors the trial court's decision to admit the evidence.

As to *Giglibianco* factors three and four, the admission of the backpack and its contents was not unfairly prejudicial, nor was it confusing or distracting from the main issues. Again, Appellant admitted that the backpack was his. Evidence is unfairly prejudicial if it has a "tendency to tempt the jury" into finding guilt on grounds apart from proof of the offense charged. *Mechler*, 153 S.W.3d at 440–41. The evidence related to an element of the offense—that Appellant intentionally or

11

knowingly possessed the firearm—therefore, it was not unfairly prejudicial. *Id.* Further, possession, or "actual care, custody, or control," of the firearm was an essential element of the crime with which Appellant was charged. Accordingly, considering *Giglibianco* factors three and four, the evidence strongly favored the trial court's decision to admit that evidence.

The last two *Giglibianco* factors address any tendency of the evidence to be given undue weight by the factfinder and the likelihood that it would be repetitive or time consuming. 210 S.W.3d at 641–42. There is no evidence that, in the admission of this evidence, undue time was consumed at trial. Once the ammunition was deemed admissible, the State spent minimal time developing the evidence through testimony and exhibits. Further, that the backpack contained ammunition, combined with Appellant's admission that the backpack (and by association its contents) were his, could all be properly weighed by the jury. The relevance of the evidence was apparent, and its potential to mislead or unfairly prejudice the jury was low. Weighing these last two *Gigliobiano* factors, we cannot say that the admission of the contents of the backpack was an abuse of discretion by the trial court. *Gigliobianco*, 210 S.W.3d at 642.

Rule 403, which favors the admissibility of relevant evidence, provides that a trial court may exclude relevant evidence if its probative value is *substantially* outweighed by a danger of unfair prejudice. *See* TEX. R. EVID. 403. Weighing all of the *Gigliobiano* factors together, we conclude that the probative value of the evidence was not substantially outweighed by the risk of unfair prejudice. We cannot say that the trial court abused its discretion or that it acted unreasonably when it admitted evidence of the contents of the backpack. *Martin,* 570 S.W.3d at 437. Accordingly, we overrule Appellant's second issue.

*This Court's Ruling*

We affirm the judgment of the trial court.


                                    W. BRUCE WILLIAMS

                                    JUSTICE


August 31, 2023

Do not publish.  *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.